USDC SDNY
DOCUMENT
FILED ELECTRONICALLY
DOC #
DATE FILED: 2/26/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
ANTHONY BOYD,                                    :

                     Petitioner,     :

          -against-                        :          **REPORT AND RECOMMENDATION**

UNITED STATES OF AMERICA,           :          12 Civ. 474 (JSR)(KNF)

                Respondent.   :
------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE JED S. RAKOFF, UNITED STATES DISTRICT JUDGE

## BACKGROUND

Before the Court is Anthony Boyd's ("Boyd") amended motion, made pro se pursuant to 28 U.S.C. § 2255, to vacate his sentence of two hundred months imprisonment, five-years supervised release and restitution, following his conviction on two counts of bank robbery, twelve counts of armed bank robbery and one count of escape from federal custody. The respondent opposes the amended motion.

### *Boyd's Contentions*

In the amended motion, Boyd contends that his Fifth Amendment due process rights were violated by the admission at trial of false and fraudulent deoxyribonucleic acid ("DNA") evidence. According to Boyd, "[t]he original and unadulterated DNA profile of the perpetrator of these robberies was entered into the National DNA Index System (NDIS) database prior to Boyd's initial arrest FB09-00183," but on the first day of trial, the government's expert witness, J. Lucas Herman ("Herman") "revised FB09-00771" DNA profile to match Boyd's "DNA profile FB09-S0595." Boyd asserts:

1

FB09-00183 is the very first robbery in this pattern and DNA testing began twenty one (21) days before FB09-00771, which was the third robbery in this pattern. The Evidence Tracking Sheet for FB09-00183 (Exhibit E) shows that DNA testing began on January 09, 2009, and concluded on February 25, 2009, resulting in a DNA profile (Exhibit F). The Evidence Tracking Sheet for FB09-00771 (Exhibit G) shows that DNA testing began on January 30, 2009, and also concluded on February 25, 2009, resulting in DNA profile (Exhibit H). Exhibit H is the DNA Evaluation Form for FB09-00771 that has been falsified, the bottom half reads[:] Profile entered into Linkage (DNA database) on 2/24/09, but Exhibit G, the Evidence Tracking Sheet shows that FB09-00771 was Pending B2-C4 (DNA typing) on 2/25/09 and could not have been completed before that date. Exhibit H also lists CODIS (Combined DNA Index System) Core Loci FGA - D18S51 - TPOX - CSF1PO - and D2S1338 as incomplete. An attempt was made to somehow explain the need for FB09-00771 to be completed before FB09-00183 (Exhibit I), which is part of the same pattern.

Boyd contends that, prior to his March 25, 2009 arrest, the New York Police Department lab confirmed that the DNA profiles from the first and third robberies matched. On June 29, 2009, before Boyd was released from prison, he submitted a DNA elimination sample to the Federal Bureau of Investigation ("FBI") for a comparison to the DNA profile of the perpetrator of these robberies. Boyd maintains that "[t]his very sample was used to alter FB09-00771 to wrongfully implicate Boyd at trial." He asserts that, "although FB09-00771 was purported to be produced on 2/24/09, as Exhibit H reads, it would be impossible for FB09-00771 to match my DNA profile when I did not commit any of these crimes." Therefore, Boyd contends, it was not until after 6/23/09, when he provided the FBI his DNA sample for comparison by the New York City Office of the Chief Medical Examiner ("OCME"), that the FB09-00771 DNA profile was revised to match his DNA profile. Boyd asserts that DNA records in NDIS "will prove this."

Boyd contends that Herman testified at trial that forensic evidence from four robberies all matched Boyd's DNA profile, and a DNA Profile Evaluation Form Laboratory No. FB09-S0595 alleges that FB09-00771, FB09-00183, FB09-01074 and FB09-04173 all match Boyd's DNA

profile and are all in CODIS, which is a software program that searches NDIS. According to

Boyd:

> The FBI maintains a National DNA Index System ("NDIS") that is "a national storage medium" consisting of "a system of DNA records uploaded by federal, state, and local criminal justice agencies." " . . . In order to link a record in the NDIS to any individual, a different database must be used, which for ease of reference here will be termed a link-database. The F.B.I. maintains such a link-database for federal offenders only, called the Sample Tracking and Control System ("STaCS") . . . . The FBI can identify DNA records for federal convicts.

According to Boyd, he was convicted for a bank robbery in 1998 and supplied a DNA suspect

sample in connection with the 1998 case, as well as a DNA sample upon release from prison in

2008. He asserts:

> STaCS can conclusively prove that none of the DNA evidence introduced at trial matches Boyd's DNA profile. The dates that the DNA evidence was entered into CODIS are crucial to Boyd's claim that the DNA evidence was fabricated. Once each DNA profile was created it was uploaded into the NDIS. FB09-00771 is fraudulent, FB09-00183 is the actual DNA profile that was first uploaded into the NDIS. FB09-00183 is the crux of my claim, prior to Boyd's initial arrest on March 25, 2009, when FB09-00183 was entered onto CODIS, the original DNA profile in the NDIS database could not be altered. Only after 6/23/09, when the OCME obtained Boyd's suspect sample could J. Lucas Herman substitute the DNA profile.

Boyd asserts that "[t]he Government's failure to disclose FB09-00183 uploaded into the NDIS

from the OCME violated Fed. R. Crim. P. 16(c) Continuing duty to disclose, and the false DNA

evidence and testimony at trial violated" his Fifth Amendment due process rights. According to

Boyd, he was prejudiced by the DNA evidence. Boyd "requests a hearing or disclosure of

database upload FB09-00183, pursuant to Title 42 U.S.C.S. § 14132(b)(3)(B) and (C),

reviewable by Title 5 U.S.C. § 706(1) and the Fifth Amendment of the Constitution so that Boyd

may have these wrongful convictions vacated."

***Respondent's Contentions***

The respondent contends that Boyd's "arguments in the Amended Motion, while cloaked in allegations of new violations, are merely repetitions of claims that have been made and rejected repeatedly by the District Court and the Second Circuit." According to the respondent, Boyd "continues to rely on the same erroneous theory that he asserted in previous motions and appeals: that the 'admission at trial of false DNA evidence' prejudiced his trial and led to his 'wrongful conviction.[']" The respondent asserts that Boyd's arguments are meritless, and he did not provide a "new basis on which to ground his claims." He maintains that "[t]he evidence made clear that as of November 20, 2009, when this issue was first raised at trial, the defendant's DNA profile was not in NDIS, the national DNA database," and no evidence exists indicating otherwise; thus, the "argument that his DNA existed in a database before his arrest for the bank robberies, and that the DNA evidence introduced at trial therefore must have been fraudulent, lacks any support in the record and should be readily rejected." More specifically, the respondent asserts, the assigned district judge already denied and found meritless Boyd's motion for renewal of his Title 42 U.S.C. Section 14132(b)(3)(B) and (C) application, namely, disclosure of "NDIS database upload FB09-00183 . . . so that Boyd may have these wrongful convictions vacated." Furthermore, Herman's report and his testimony indicate that a revision in the profile did not result in any change concerning the profile and had no impact on the fact that the DNA sample that Boyd provided in June 2009 matched, ultimately, the DNA taken from the evidence. Since Boyd relies on the same allegations that OCME employees manipulated the DNA evidence fraudulently, which he asserted in his previous appeals and motions, and he provides no new evidence or substance on which to base his Fifth Amendment due process claims, his motion is baseless.

*Boyd's Reply*

Boyd contends that he submitted "uncontroverted proof" that the DNA evidence introduced at trial was fabricated. "The Evidence Tracking Log for FB09-00771" shows "that FB09-00771 was pending B2-C4 (DNA typing) on 2/25/09, therefore the DNA profile could not have been developed before that date," but the DNA Profile Evaluation Form for FB09-00771 demonstrates "that FB09-00771's DNA profile [was] checked against Lab types and entered into Linkage (DNA database) on 2/24/09." According to Boyd, "[i]t is impossible for FB09-00771 to have been entered into the database before the DNA Profile was created on 2/25/09"; thus, the FB09-00771 profile evaluation form had to be falsified to precede FB09-00183 profile evaluation form, "which is the true DNA Profile created in this case on 2/25/09." Boyd asserts that "[t]here was no reason for FB09-00771 to be completed before FB09-00183 as conveyed in Exhibit I, or for FB09-00771 to be revised on the very first day of trial." He maintains that Exhibit G, the Evidence Tracking Form for FB09-00771, "has never before been submitted in any prior challenge to the admission of the DNA evidence at trial or request for DNA database uploads," and his "prior 42 U.S.C.S. § 14132(b)(3)(B) and (C) requests have not previously been adjudicated on the merits either." Boyd asserts that the respondent failed to address the fabrication and the revision of the FB09-00771 profile and ignored his "claim pursuant to the A.P.A." Boyd contends that his acquittal of the robbery charged in Count 6 of the indictment shows that the government's case was not overwhelming and, but for the violation of his Fifth Amendment due process rights by "withholding FB09-00183 which is exculpatory, Boyd would have been acquitted of all counts at trial."

## DISCUSSION

### *Legal Standard*

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, . . . or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "If the motion is not dismissed, the judge must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 [of the Rules Governing Section 2255 Proceedings for the United States District Courts] to determine whether an evidentiary hearing is warranted." Rule 8(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts. "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). "A hearing is not required . . . where the allegations are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false or patently frivolous." United States v. Malcolm, 432 F.2d 809, 812 (2d Cir. 1970).

"[A] Section 2255 petitioner may not 'relitigate questions which were raised and considered on direct appeal.'" Mui v. United States, 614 F.3d 50, 55 (2d Cir. 2010) (quoting United States v. Becker, 502 F.3d 122, 127 (2d Cir. 2007)). "A claim is not barred from being brought in a § 2255 motion where it rests upon a different legal 'ground' for relief than the one previously raised." United States v. Pitcher, 559 F.3d 120, 123 (2d Cir. 2009). The Supreme Court has interpreted legal ground to mean "a sufficient legal basis for granting the relief sought

by the applicant. . . . Should doubts arise in particular cases as to whether two grounds are different or the same, they should be resolved in favor of the applicant." Sanders v. United States, 373 U.S. 1, 16, 83 S. Ct. 1068, 1077 (1963).

The Due Process clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The first question in any due process inquiry is whether the plaintiff has a constitutionally protected interest. In a criminal proceeding, the existence of a constitutionally protected liberty interest is obvious." DeMichele v. Greenburgh Cent. Sch. Dist., 167 F.3d 784, 789 (2d Cir. 1999) (citation omitted). The second question is whether the government deprived the petitioner of his due process rights. See id.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97 (1963). To prevail on a Brady violation claim, the petitioner must establish that: (1) "[t]he evidence at issue [is] favorable to [him], either because it is exculpatory, or because it is impeaching"; (2) "evidence must have been suppressed by the [government], either willfully or inadvertently"; and (3) "prejudice . . . ensued." Strickler v. Greene, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 1948 (1999).

> Impeachment evidence is evidence having the potential to alter the jury's assessment of the credibility of a significant prosecution witness. Materiality of *Brady* evidence is established when there is a reasonable likelihood that disclosure of the evidence would have affected the outcome of the case, or would have put the case in such a different light as to undermine confidence in the outcome. The omitted evidence is assessed in light of the entire record.
>
> United States v. Rivas, 377 F.3d 195, 199 (2d Cir. 2004) (internal quotation marks and citations omitted).

"Most constitutional errors are amenable to harmless error analysis." <u>Bilzerian v. United States</u>, 127 F.3d 237, 242 (2d Cir. 1997).

### *Application of Legal Standard*

<u>Whether the Fifth Amendment Due Process Rights Claim Was Raised and Considered on Direct Appeal</u>

Proceeding <u>pro se</u> on direct appeal, Boyd summarized his claims concerning DNA evidence under the headings: (i) "False Evidence Claim," stating: "Judge Rakoff did not address the False and Fraudulent Evidence Claim in the Rule 33 Motion and declined to order the government to disclose evidence that Boyd's DNA Profile was in CODIS"; and (ii) "Confrontation Claim," stating: "The record is devoid of the actual DNA Profile that was adduced because the government failed to call the analyst that performed the DNA tests for cross examination. The analyst that conducted the upload/search was crucial to the defense." In the section of his appellate brief captioned "ARGUMENT," Boyd articulated his DNA-related claims as follows: (1) "The District Court Erred by Denying Boyd's Rule 33 Motion Without a Hearing to Determine that Boyd's DNA Profile was in CODIS"; and (2) "The Government's Introduction of DNA evidence and Testimony, Through An Analyst Whom [sic] Did Not Perform The Tests, But Interpreted The Results, Violated Boyd's Sixth Amendment Right To Confront The Witnesses."

Here, Boyd contends that his Fifth Amendment due process rights were violated "By The Admission At Trial Of False And Fraudulent DNA Evidence." Although Boyd's Rule 33 motion for a new trial contended that "the government's knowing use of false and unreliable DNA evidence" warranted a new trial, his Rule 33 motion argument was based on the Sixth

Amendment Confrontation Clause, not the Fifth Amendment Due Process Clause. Any doubt about whether Boyd raised his Fifth Amendment due process claim on direct appeal must be resolved in his favor. See Sanders, 373 U.S. at 16, 83 S. Ct. at 1077. Accordingly, Boyd's Fifth Amendment Due Process violation claim is not barred from being presented via the instant motion.

> ### Whether Boyd Had a Constitutionally Protected Interest under the Fifth Amendment Due Process Clause

Boyd had a constitutionally protected liberty interest during the underlying criminal proceeding. See DeMichele, 167 F.3d at 789. Thus, he was entitled to the protection of the Fifth Amendment Due Process Clause, during the underlying criminal proceeding.

> ### Whether the Government Deprived Boyd of his Due Process Rights under the Fifth Amendment Due Process Clause

Although Boyd contends that he did not submit Exhibit G, "[t]he Evidence Tracking Form for FB09-00771," in his prior challenges to the admission of the DNA evidence at trial or request DNA uploads, he does not contend that Exhibit G or Exhibit H, the FB09-00771 Profile Evaluation Form, are new evidence. Since, at the trial, Boyd possessed Exhibit G, showing that the FB09-00771 DNA profile was "Pending B2-C4," on "2/25/09," as well as Exhibit H, showing both "Profile checked against Lab Types," and "Profile entered into Linkage," on "2/24/09," he had an opportunity to cross-examine Herman, at trial, about any inconsistency in the dates; he failed to do so. Thus, Boyd failed to show that any due process violation occurred in connection with Exhibits G and H.

Boyd contends that "[t]he Government's failure to disclose FB09-00183 uploaded into the NDIS from the OCME," violated his due process rights because FB09-00183 "is the true DNA Profile created in this case on 2/25/09." The thrust of Boyd's argument appears to be that, had

9

the government disclosed "FB09-00183 uploaded into the NDIS from the OCME," that disclosure would have shown that the FB09-00183 DNA profile did not match his DNA profile, allegedly entered in NDIS prior to the date on which any DNA profile was uploaded in the underlying criminal action. The flaw in this argument is Boyd's unsupported assumption that his DNA profile was uploaded in NDIS prior to the date on which any DNA profile was uploaded in connection with the underlying criminal action. Although Boyd believes that his DNA sample taken in connection with his 1998 conviction resulted in the upload of his DNA profile to NDIS, no evidence in the record shows that his DNA profile was uploaded to NDIS prior to the upload of: (a) any DNA profile created from the evidence obtained in connection with the underlying criminal action; or (b) his DNA profile created from a sample provided in connection with the underlying criminal action. On the contrary, the undisputed evidence shows that Boyd's DNA profile was not uploaded in NDIS, as of November 2009. Thus, Boyd failed to show that the evidence alleged to have been withheld by the prosecution would be favorable to him or that it would have the potential to alter the jury's assessment of Herman's credibility, or put the case in such a different light as to undermine confidence in the outcome. Accordingly, Boyd did not establish that his Fifth Amendment due process rights were violated by the government's "failure to disclose FB09-00183 uploaded into the NDIS from the OCME." Since it is undisputed that Boyd's DNA profile was not in NDIS as of November 2009, and his allegations of constitutional deprivation are unsupported, no evidentiary hearing is warranted.

## RECOMMENDATION

For the foregoing reasons, I recommend that Boyd's motion, pursuant to 28 U.S.C. § 2255, be denied.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff, 500 Pearl Street, Room 1340, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Rakoff. *Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.* See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
       February 26, 2014

Respectfully submitted,

*Kevin Nathaniel Fox*

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Copy mailed to:

Anthony Boyd

11